UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
BARBARA BERNARDINO DUBOW,
CONSTANCE DIBENEDETTO, MARK
TANNENBAUM, MARTIN GRUBER, and
EDWARD GLISTER,

                          Plaintiffs,               **MEMORANDUM AND ORDER**
                                                               2:16-cv-3717 (DRH)(AKT)

   - against -

THE UNITED STATES FEDERAL EMERGENCY
MANAGEMENT AGENCY,

                          Defendant.
---------------------------------------------------------X

**APPEARANCES**

**LAW OFFICES OF FRANCIS MCQUADE**
Attorneys for Plaintiffs
116 East Park Ave, Suit 116
Long Beach, NY 11561
By:    Francis X. McQuade, Esq.

**UNITED STATES ATTORNEYS OFFICE FOR THE EASTERN DISTRICT**
Attorneys for Defendant
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Mary M. Dickman, Esq.

**HURLEY, Senior District Judge:**

INTRODUCTION

Plaintiffs Barbara Bernardino Dubow, Martin Gruber, Constance Dibenedetto, Mark

Tannenbaum, and Edward Glister (collectively "Plaintiffs") brought this civil rights action

against the United States Federal Emergency Management Agency ("FEMA" or "Defendant")

under 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, the

Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C.

§§ 5121, et seq., and the FEMA Disaster Assistance Policy 9525.13, 44 C.F.R. § 206. Plaintiffs claim that they have been denied the right of due process by Defendant's decision to permit alternate use of FEMA funds by the South Nassau Communities Hospital ("SNCH") that were originally granted to the now-defunct Long Beach Medical Center ("LBMC").

Presently before the Court is Defendant's motion to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons explained below, Defendant's motion is granted in its entirety.

## BACKGROUND

The following relevant facts are taken from the Parties' papers and the Complaint.

Plaintiffs are residents of the Long Beach barrier island communities ("Long Beach"). (Compl. [DE 1] ¶ 10.) Long Beach was formerly served by LBMC, a "general hospital" under the definitions of New York State Public Health Law 2801(1). (*Id.*) On October 29, 2012, LBMC was shut down due to damage sustained during Superstorm Sandy. (*Id.* ¶ 11.) At some time after the storm, FEMA designated LBMC as the sub-recipient of $154,000,000 of disaster assistance funds[1] to restore "comparable medical facilities to the storm-affected communities." (Compl. ¶ 12.) Plaintiffs allege that LBMC was restored and ready to function by June 2013, but the State of New York "refused to allow it to reopen." (*Id.* ¶ 11.)

On or about February 19, 2014, LBMC filed a petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of New York. (*Id.*) On May 22, 2014, the Bankruptcy Court approved the sale of LBMC assets to South Nassau Community Hospital ("SNCH"). *In re Long Beach Medical Center*, No. 8-14-70593-ast, Bankr. Court Order Approving Sale of Debtor

---

[1] The New York State Division of Homeland Security and Emergency Services is the designated grant recipient.

LBMC's Real Property and Designated Personal Property Assets (May 22, 2014) [DE 185]. After LBMC's bankruptcy and the sale of its assets to SNCH, FEMA approved SNCH as the substitute sub-recipient for the funds in place of LBMC. (Mem. in Supp. [DE 17] at 5.) SNCH has said that it plans to use a portion of the funds to construct a facility in Long Beach that will provide emergency medical services. (*Id.*) The majority of the funds will be used to expand preoperative and critical care services at SNCH's Oceanside campus, "based upon an assessment that expansion will better serve the residents of Long Beach and the surrounding communities than would the rebuilding of a full-service hospital in Long Beach." (*Id.*)

On July 5, 2016, Plaintiffs brought this action. Plaintiffs state that the "need for a fully-operational hospital on Long Beach island is heightened by the fact that there are only three routes to the mainland and hospital care." (Compl. ¶ 11). Plaintiffs note that access to each route is controlled by a drawbridge that is frequently raised for marine traffic, and has occasionally gotten stuck in the up position. (*Id.*) Plaintiffs also point to the fact that these routes are often clogged with traffic from beachgoers. (*Id.*) Plaintiffs state two causes of action: (1) the violation of Plaintiffs' right to due process and equal protection of the laws under the Fourteenth Amendment by denying them the "value and benefit of federal money intended to repair their storm-damaged community[;]" and (2) the violation of the Stafford Act and FEMA Disaster Assistance Policy 9525.13, 44 C.F.R. § 206 by permitting an alternate use of federal monies designated to be allotted to Plaintiffs' communities. (*Id.* ¶¶ 19–26.)

On March 24, 2017, Defendant brought the instant motion to dismiss under Rules 12(b)(1) and 12(b)(6).

# DISCUSSION

## I. The Stafford Act and FEMA Disaster Assistance Policy

### A. Stafford Act

The Stafford Act was enacted in 1988 "to provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibility to alleviate the suffering and damage which result from [major] disasters." 42 U.S.C. § 5151(b). A major disaster is defined as:

> any natural catastrophe (including any hurricane, tornado, storm, high water, winddriven water, tidal wave, tsunami, earthquake, volcanic eruption, landslide, mudslide, snowstorm, or drought), or, regardless of cause, any fire, flood, or explosion, in any part of the United States, which in the determination of the President causes damage of sufficient severity and magnitude to warrant major disaster assistance under this chapter to supplement the efforts and available resources of States, local governments, and disaster relief organizations in alleviating the damage, loss, hardship, or suffering caused thereby.

*Id.* at § 5122(2). The Stafford Act becomes relevant when a Governor of an affected state finds that state and local resources are insufficient to deal with a major disaster. The Act is triggered when the Governor asks the President to declare an area a "major disaster," and the President declares that a major disaster or emergency exits. *Id.* at § 5170. The Stafford Act charges FEMA with administration of the allocated financial and physical assistance.

### B. FEMA Disaster Assistance Policy

FEMA has adopted regulations setting forth the policies and procedures that must be followed to determine an applicant's eligibility for public assistance. Among these is the FEMA Disaster Assistance Policy 9525.13 ("Policy"), which provides "guidance on allowable uses and limitations of alternate project funds when restoration of the original damaged facility is not in the best interest of the public." FEMA Policy 9525.13(III); *see also* 44 C.F.R. §206.203. The

Policy also sets out the means by which an applicant may request approval of an alternate project from FEMA. *See id.*

## II. Parties' Contentions

Defendant advances two overarching arguments in support of their motion to dismiss: (1) the Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing to sue, the Court lacks subject matter jurisdiction, and FEMA is protected by sovereign immunity; and (2) Plaintiffs' due process claims should be dismissed for failure to state a claim upon which relief can be granted. (Mem. in Supp. at ii.) Each of these arguments are addressed in turn below.

## III. Rule 12(b)(1) Motion to Dismiss

### A. Rule 12(b)(1) Legal Standard

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

A Rule 12(b)(1) motion is the proper vehicle for a claim that plaintiffs lack standing to sue, *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n. 6 (2d Cir. 2006, and that a defendant is protected by sovereign immunity, *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996). *New York v. U.S. Army Corps of Engineers*, 896 F. Supp. 2d 180, 196 (E.D.N.Y. 2012).

B.  The Motion to Dismiss Under Rule 12(b)(1) is Granted

As stated above, Defendant argues that there are three bases for dismissing the Complaint under Rule (12)(b)(1): (1) lack of standing; (2) lack of subject matter jurisdiction; and (3) sovereign immunity. The Court addresses each of these separately below.

i.  Standing

Article III of the Constitution requires that a plaintiff demonstrate that he has standing to bring an action by showing that there is: "1) an injury-in-fact, that is an actual or imminent, and concrete and particularized, invasion of some legally protect[ed] interest of the plaintiffs; 2) a fairly traceable causal connection between the actions of the defendants and the injury-in-fact; and 3) a likelihood that a favorable decision will redress plaintiffs complained-of injury." *New York v. U.S. Army Corps of Engineers*, 896 F. Supp. 2d 180, 189 (E.D.N.Y. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). To demonstrate that a plaintiff has an injury in fact, she must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical[.]"' *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Allen v. Wright*, 468 U.S. 737, 755 (1984). The party invoking federal jurisdiction, here the Plaintiffs, bears the

burden of establishing these elements. It is important to note that this is a conjunctive test, so if Plaintiffs fail to meet any of the three elements they do not have standing.

Defendant claims that Plaintiffs lack standing because they do not satisfy any of the three elements. (Mem. in Supp. at 9.) Under the first prong of the *Lujan* test, Defendant argues that there is no injury in fact because Plaintiffs have no legally protected interest in disaster funds available from FEMA. (*Id.* at 10.) The Court agrees with this assessment. The FEMA disaster funds are a government benefit. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it [or a] unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Xiang Li v. Morrisville State College*, 434 Fed. Appx. 34, 34 (2d Cir. 2011) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972)). Numerous courts, including the Second Circuit, have established that no property interest in a benefit will be found to exist when a statute or regulation imputes discretion to the governing body charged with distributing the benefit. *See, e.g.*, *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (citing *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 175 (2d Cir. 1991)); *see also Town of Castle Rock Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion").

To determine whether statutes or regulations confer a protected property interest, courts ask whether they place "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249 (2005). An act is discretionary if it "involves an element of judgment or choice[.]" *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988).)

FEMA's governing statute in this instance is the Stafford Act and the Policy. In reviewing the Policy that Plaintiffs challenge, it is apparent that Defendant has an element of choice in approving alternate use of project funds. For example, nowhere does the Policy state that if a proposed alternate project meets certain criteria that it will be guaranteed to receive the funding. Additionally, the Policy states that "FEMA may evaluate the alternate project and the action at the original site separately if they have independent utility, the approval of one action does not foreclose alternatives for the other, and the approval of one action does not justify or commit FEMA to the other action." Policy at VII(19). This language further confirms that FEMA is not required to take any single course of action under the Policy. As such, Defendant retains discretion in conferring the benefit of these funds. The same is true of the allocation of funds under the Stafford Act generally, which Plaintiffs state they do not directly challenge. (Mem. in Opp. [DE 15] at 32 ("Plaintiffs are not questioning judgment or discretion of FEMA." [sic])); *see City of San Bruno v. FEMA*, 181 F. Supp. 2d 1010 (N.D. Cal. 2001) (the City of San Bruno challenged FEMA's determination that a city was ineligible for federal disaster relief, and the Court found that based on the facts it was "undisputed that FEMA ultimately has discretion regarding which projects to fund.")

Plaintiffs do not point to a single case or regulation stating that FEMA's actions in allocating and distributing disaster relief funds are nondiscretionary. Rather, Plaintiffs simply state that the "Alternate Use Program provisions of the Stafford Act at 9525.13 have such regulations" that limit official discretion. (Mem. in Opp. at 22–23.) Plaintiffs do not quote any language from the Policy with explicit mandatory language or, for that matter, any language at all.

Even if Defendant's actions were nondiscretionary at the point that FEMA approved the transfer of funding from LBMC to SNCH, Plaintiffs still cannot show how or why they personally have a property right in the funds. Moreover, Plaintiffs' argument that the issue is not whether Defendant had discretion but whether Defendant complied with the explicit language of the Policy is unpersuasive because Plaintiffs do not offer any convincing evidence that Defendant violated the Policy. The Policy provides for situations in which "restoration of the original damaged facility is not in the best interest of the public." Policy at III. Plaintiffs do not dispute that the determination was made that restoring LBMC to a full hospital was not in the best interest of the public. (*See* Compl. ¶ 12.) Based on the evidence in the record, Defendant's decision under the Policy complied with the explicit directives of the Policy.

Given that Plaintiffs do not provide the Court with any support for their contention that they have a property interest in the disaster relief funds, and Defendant's actions appear to have been discretionary, the Court finds that Plaintiffs do not have an injury in fact. Plaintiffs also fail on the second and third prongs of the *Lujan* test for standing. Under prong two, there is no traceable causal connection between the actions of the defendants and the alleged injury because FEMA complied with their directives in reassigning the funds. The alleged injury here—the lack of a full service medical facility on Long Beach—seems more traceable to New York State's actions in refusing to allow LBMC to reopen, and/or SNCH's determination that the public interest would be better served by building out the hospital facilities at the Oceanside campus.[2] (*See* Compl. ¶¶ 11–12.) On the third prong, it is unlikely that a favorable decision will redress Plaintiffs' alleged injury because LBMC no longer exists so FEMA has no one to give the funds

---

[2] The Court does not mean to imply that Plaintiffs would have standing to bring suit against either of these entities.

to other than the entity that acquired LBMC's assets, which is exactly what FEMA has done. FEMA is certainly in no position to force New York to reopen the LBMC facility.

Therefore, Defendant's Motion to Dismiss the Complaint for lack of standing is granted.

> ii. Subject Matter Jurisdiction

Defendant also argues that Plaintiffs' claim pursuant to 42 U.S.C. § 1983 must be dismissed for lack of subject matter jurisdiction because § 1983 only provides for causes of action against persons who violate an individual's rights, and Defendant is an executive agency rather than a person. (Mem. in Supp. at 12.) Plaintiffs claim that "[t]he State of New York's administration of FEMA money makes for an appropriate action under USC 42 Section 1983 [sic]." (Mem. in Opp. at 24.) However, Plaintiffs have only brought suit against FEMA as an agency; not against the FEMA Administrator, or any other individual. Moreover, Plaintiffs have not named the State of New York or any New York State employee in their official capacity as a defendant. Where a person associated with the State of New York may have been acting under color of state law, Defendant was acting exclusively under federal law, therefore § 1983 is inapplicable. *See, e.g.*, *Hurt v. Philadelphia*, 806 F. Supp. 515, 525 (E.D. Pa. 1992). Therefore, Plaintiffs' claims against Defendant under 42 U.S.C. § 1983 must be dismissed.

> iii. Sovereign Immunity

Finally, Defendant argues that Plaintiffs' claims under the Stafford Act and the APA must be dismissed because sovereign immunity bars any claims that are grounded in federal statutory law without a waiver. (Mem. in Supp. at 13.) Again, the Court agrees.

The Supreme Court has established that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475

(1994). Here, Plaintiffs bring suit pursuant to 28 U.S.C. §§ 1331, 2201, and 2202. The Court will evaluate each of these grounds in turn.

28 U.S.C. § 1331 provides federal jurisdiction for civil actions arising under the Constitution, laws, or treaties of the United States. This section, in concert with the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., allows for judicial review of agency action that has adversely affected or aggrieved a person within the meaning of a relevant statute. 5 U.S.C. § 702. The APA does not allow for review if "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* at § 701. In other words, either an express incorporation of sovereign immunity or agency discretion precludes APA applicability.

Here, the Stafford Act provides an express incorporation of sovereign immunity for discretionary acts. It states that "[t]he Federal Government shall not be liable for any claim based upon the exercise or performance of or failure to exercise or perform a discretionary function or duty on the part of a Federal Agency or an employee of the Federal Government in carrying out the provisions of this Act." 42 U.S.C. § 5148; *see also In re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 192–93 (2d Cir. 2008) ("The discretionary function immunity in the Stafford Act . . . is obviously animated by separation of powers concerns. [This section] of the Stafford Act protects a right—the right of federal agencies to make discretionary decisions when engaged in disaster relief efforts without fear of judicial second-guessing[.]")

To determine whether an action is a discretionary function shielded from judicial review by the Stafford Act, "courts have looked to the two-prong test set forth by the Supreme Court in *United States v. Gaubert*, 449 U.S. 315 (1991)." *Konashenko v. FEMA*, No. 12-CV-3034, 2014 WL 1761346, at *4 (E.D.N.Y. Apr. 29, 2014) (citing *Dureiko v. United States*, 209 F.3d 1345,

1351 (Fed. Cir. 2000); *Sunrise Village Mobile Home Park, L.C. v. United States*, 42 Fed. Cl. 392, 398 (Ct. Cl. 1998); *California-Nevada Methodist Homes, Inc. v. FEMA*, 152 F. Supp. 2d 1202, 1207 (N.D. Cal. 2001); *United Power Association v. FEMA*, No. 99-A2-180, 2000 WL 33339635 (D.N.D. Sept. 13, 2000).)  This test was originally established to evaluate the discretionary function exception under the Federal Tort Claims Act. *See id.* Under the first prong, the Court considers whether the act involved a judgment of choice. *Konashenko*, 2014 WL 1761346 at * 4 (citing *Gaubert*, 499 U.S. at 322).  An act does not involve choice "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Konashenko*, 2014 WL 1761346 at * 4 (quoting *Dureiko*, 209 F.3d at 1351). Under the second prong, the Court considers whether the discretionary function exception serves to prevent judicial second-guessing of decisions "grounded in social, economic, and political policy[.]" *Id.* An act "'based on the purposes that the regulatory regime seeks to accomplish' are protected." *In re World Trade*, 521 F.3d at 195 (quoting *Gaubert*, 499 U.S. at 325 n. 7).

  Applying the *Gaubert* test to the facts at bar, the FEMA decision to reallocate the disaster funds from LBMC appears to have been a discretionary act in disaster relief efforts because there was no prescribed course of action for Defendant's officers to follow.  The language of the Policy discussed *supra* supports this interpretation.  Moreover, Plaintiffs point to no evidence or case law to the contrary.  In fact, Plaintiffs surprisingly state in their Memorandum in Opposition to the Motion to Dismiss that Defendant's allegations regarding sovereign immunity "may all be so." (Mem. in Opp. at 29.)  Plaintiffs try to distinguish their claims on the basis that they are challenging Defendant's failure to "follow the plain language of the law under the [Policy]."

(*Id.*)  However, this will not overcome sovereign immunity because Defendant's actions were discretionary.[3]

Under the second prong of the *Gaubert* test, the Second Circuit has previously found that the discretionary exception in the Stafford Act serves to prevent judicial second-guessing of agency decisions.  *See, In re World Trade*, 521 F. 3d at 192.  Additionally, allocation of disaster relief funds under the Stafford Act and redistribution of those same funds to best serve the interests of the public under the Policy are clearly acts based on the purposes that the Stafford Act regulatory regime seeks to accomplish.  *Id.* (citing *Gaubert*, 499 U.S. at 325 n. 7.)  Thus, Defendant's actions meet both prongs of the *Gaubert* test.  Reassigning the disaster relief funds from LBMC to SNCH was a discretionary act that is protected by sovereign immunity under the Stafford Act discretionary exception.  Therefore, Plaintiffs' claims under 28 U.S.C. § 1331, and any other claims under the APA must be dismissed.

28 U.S.C. §§ 2201 and 2202 respectively provide for declaratory relief and such further necessary or proper relief based on a declaratory judgment.  Like 28 U.S.C. § 1343, these sections work in tandem with the APA.  As Defendant is shielded by sovereign immunity from actions brought under the APA, there is no basis for jurisdiction under §§ 2201 or 2202.

    iv.    Other Grounds

The Court independently notes that Plaintiffs claim that "jurisdiction may be appropriate under" 42 U.S.C. §§ 1983 and 1985(3).  42 U.S.C. § 1985(3) concerns conspiracies between two or more persons to deprive persons of rights or privileges.  The Complaint never alleges a

---

[3] As previously noted, even if Defendant's decision to re-allocate funds from LBMC to SNCH was a nondiscretionary act, there is no evidence in the record that Defendant has not followed the plain language of the statute.  First, a finding was made that restoring the original damaged facility was not in the best interest of the public. *Id.* at III.  Second, the Policy allows for using allocated funds for multiple projects that serve the "general area," such as what SNCH seeks to do with the LBMC and Oceanside medical facilities. *Id.* at VII(5), (11).

conspiracy between two or more persons to deprive Plaintiffs' rights or privileges, despite including § 1985(3) as a basis for jurisdiction. (*See* Compl.) Therefore, the Court declines to find jurisdiction on this basis.

42 U.S.C. § 1981 establishes that

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

As with § 1983, § 1981 protects against impairments under color of state law. 42 U.S.C. § 1981(c). Here, FEMA was acting under Federal law not under color of state law. Therefore, § 1981 does not provide a basis for jurisdiction. Moreover, Plaintiffs state no claim under § 1981 despite including it as a basis for jurisdiction. (*See* Compl.) Again, the Court declines to find jurisdiction on this basis. The only remaining claims over which the Court would have jurisdiction if Plaintiffs had standing (which they do not) are those brought under the Fourteenth Amendment and the United States Constitution.

## IV. Rule 12(b)(6) Motion to Dismiss

### A. Rule 12(b)(6) Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.' " *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*,

762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). A document may be considered on a motion to dismiss where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in complaint or on which plaintiff relied in drafting complaint).

      B.  The Motion to Dismiss under Rule 12(b)(6) is Granted

Defendant also seeks to dismiss Plaintiffs' claims for denial of due process and equal protection under the Fourteenth Amendment and the United States Constitution. In order to have a due process claim for a property interest, a plaintiff must possess a "legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. at 577. As the Supreme Court has explained, "[i]t is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Id.* A property interest is not created by the Constitution, but rather by existing rules or regulations that secure certain benefits and thereby support a claim of entitlement to those benefits. *See id.*

As explained above, it is established precedent that a plaintiff has no property interest in a government benefit if the government agency charged with administering such benefit has discretion. *See, e.g.*, *Kapps v. Wing*, 404 F.3d at 113 (citing *Kelly Kare, Ltd. v. O'Rourke*, 930

F.2d at 175); *see also Town of Castle Rock Colo. v. Gonzales*, 545 U.S. at 756. As also elucidated in detail above, Defendant has discretion under the Stafford Act and the Policy in allocating and redistributing disaster relief funds. As such, Plaintiffs have no property interest in the funds in question and thus are not protected under the due process clause. Therefore, Plaintiffs claims under the Fourteenth Amendment must be dismissed for failure to state a claim upon which relief can be granted. Plaintiffs do not elaborate on any other Constitutional basis for their claims.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted in its entirety. The case is dismissed and the Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
January 18, 2018

/s/
Denis R. Hurley
Unites States District Judge